# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:21-CV-416-DCK

| | |
|---|---|
| KAMI YVETTE McCOY, | )<br>) |
| Plaintiff, | )<br>) |
| | ) **ORDER** |
| v. | )<br>) |
| KILO KIJAKAZI,<br>Acting Commissioner of Social Security, | )<br>)<br>) |
| | ) |
| Defendant. | )<br>) |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion For Summary Judgment Pursuant to Rule 56 of the Federal Rules of Civil Procedure" (Document No. 12) and "Defendant's Motion For Summary Judgment" (Document No. 14). The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and these motions are ripe for disposition. After careful consideration of the written arguments, the administrative record, and applicable authority, the undersigned will direct that Plaintiff's "Motion For Summary Judgment Pursuant to Rule 56 of the Federal Rules of Civil Procedure" be <u>denied</u>; that "Defendant's Motion For Summary Judgment" be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

## I.  BACKGROUND

Plaintiff Kami McCoy ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on her application for disability benefits. (Document No. 1). On or about September 10, 2019 and September 27, 2019, Plaintiff filed renewed applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405, <u>and</u> for supplemental security income under Title XVI of the Social Security

Act, 42 U.S.C. § 1383, alleging an inability to work due to a disabling condition beginning August 15, 2018. (Transcript of the Record of Proceedings ("Tr.") 173).

Plaintiff previously applied for disability benefits on June 1, 2015. (Tr. 224). The denial of those applications was affirmed by Administrative Law Judge Susan Poulos on August 14, 2018. (Tr. 224-35). The appeal of that decision to this Court was denied by the Honorable Graham C. Mullen. See McCoy v. Saul, 3:19-CV-484-GCM, 2021 WL 1187093 (W.D.N.C. Mar. 29, 2021).

The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's latest applications initially on or about February 28, 2020, and again after reconsideration on or about May 1, 2020. (Tr. 173, 301, 310, 315, 320). In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> The medical evidence shows that your condition is not severe enough to be considered disabling. You are able to think, act in your own interest, communicate, handle your own affairs, and adjust to ordinary emotional stresses without significant difficulties.
> We do not have sufficient vocational information to determine whether you can perform any of your past relevant work. However, based on the evidence in file, we have determined that you can adjust to other work. It has been decided, therefore, that you are not disabled according to the Social Security Act.

(Tr. 310, 315).

Plaintiff filed a timely written request for a hearing on or about June 16, 2020. (Tr. 173, 325-26). On December 8, 2020, Plaintiff appeared and testified at a telephonic hearing before Administrative Law Judge Paul Goodson (the "ALJ"). (Tr. 173, 190-220). In addition, James Cowart, a vocational expert ("VE"), and Chad F. Brown, Plaintiff's attorney, appeared at the hearing. Id.

2

The ALJ issued an unfavorable decision on January 5, 2021, denying Plaintiff's claim. (Tr. 170-84). On or about March 11, 2021, Plaintiff filed a request for review of the ALJ's decision, which was denied by the Appeals Council on June 16, 2021. (Tr. 1-4, 166). The ALJ decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 1).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on August 12, 2021. (Document No. 1). The parties consented to Magistrate Judge jurisdiction on November 18, 2021, and this case was reassigned to the undersigned as presiding judge on November 24, 2021. (Document No. 11).

Plaintiff's "Motion for Summary Judgment Pursuant to Rule 56 of the Federal Rules of Civil Procedure" (Document No. 12) and "Plaintiff's Memorandum In Support Of Motion for Summary Judgment" (Document No. 13) were filed January 10, 2022; and the "Defendant's Motion For Summary Judgment" (Document No. 14) and "Memorandum Of Law In Support Of The Commissioner's Motion For Summary Judgment" (Document No. 15) were filed February 4, 2022. Plaintiff timely filed a reply brief on February 17, 2022. (Document No. 16).

The pending motions are now ripe for review and disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between August 15, 2018, and the date of the ALJ decision.[1] (Tr. 174). To establish entitlement to benefits, Plaintiff has the burden of

---

[1] Under the Social Security Act, 42 U.S.C. § 301, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

4

proving disability within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

> (1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;
>
> (2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;
>
> (3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;
>
> (4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and
>
> (5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v).

The burden of production and proof rests with the claimant during the first four steps; if claimant is able to carry this burden, then the burden shifts to the Commissioner at the fifth step to show that work the claimant could perform is available in the national economy. Pass, 65 F.3d at 1203. In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 183-84).

---

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

First, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since August 15, 2018, the alleged disability onset date. (Tr. 175). At the second step, the ALJ found that "diabetes, depression, general anxiety disorder, post-traumatic stress syndrome, hypertension, and hallux rigidus" were severe impairments.[2] (Tr. 176). At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 176).

Next, the ALJ assessed Plaintiff's RFC and found that she retained the capacity to perform light work activity,

> except the claimant can occasionally climb ramps and stairs. The claimant can never climb ladders, ropes, or scaffolds and have occasional exposure to hazards. The claimant can occasionally push and pull using foot control with the bilateral lower extremities. The claimant can perform unskilled work in 2 hour segments and perform nonproduction pace work (meaning non-automated/conveyor pacing). The claimant can have occasional interaction with the public, coworkers, and supervisors. The claimant can have no more than infrequent workplace changes, no teamwork/tandem work for task completion, no conflict resolution or crisis management. The claimant also requires 2 additional restroom breaks of 5 minutes each in each half of the workday.

(Tr. 178-79). In making this finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p." (Tr. 179).

---

[2] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

6

At the fourth step, the ALJ held that Plaintiff could not perform her past relevant work as a Billing Clerk, Patient Service Coordinator, Customer Service Representative, Day Care Worker, and Receptionist. (Tr. 182). At the fifth and final step, the ALJ concluded based on the testimony of the VE and "considering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 183). Specifically, the VE testified that according to the factors given by the ALJ, occupations Plaintiff could perform included a Laundry Worker, a Coin Machine Collector, and an Ironer. Id. Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between August 15, 2018, and the date of his decision, January 5, 2021. (Tr. 184).

Plaintiff on appeal to this Court makes the following assignments of error: (1) the ALJ's consideration of Plaintiff's mental impairments is not logically explained or supported by substantial evidence; and (2) the ALJ failed to adequately explain the weight given to Dr. Christo's medical opinion. (Document No. 13, p. 3). The undersigned will discuss each of these contentions in turn.

**A.    Mental Impairments**

In the first assignment of error, Plaintiff argues that the ALJ failed to properly evaluate her mental impairments. Specifically, Plaintiff contends that "[t]he ALJ's findings that Ms. McCoy's mental impairments are not as severe as alleged are neither logically explained nor supported by substantial evidence." (Document No. 13, p. 4).

Plaintiff argues that "[t]he ALJ's conclusion that Ms. McCoy does not regularly receive psychiatric care and therefore would improve if she did so is not supported by substantial evidence and conflicts with the evidence of the record." Id. Plaintiff contends that "[t]he record shows that

7

Ms. McCoy attended extensive mental health treatment and therapy sessions" and that "[t]he ALJ fails to explain how this extensive treatment does not represent 'seeking consistent psychiatric care.'" (Document No. 13, p. 5) (quoting Tr. 180). Plaintiff cites many medical visits and psychiatric assessments documented in the record between April 19, 2016, and April 22, 2021, including six therapy appointments. (Document No. 13, pp. 5-8) (citing Tr. 17, 19, 35, 86, 100, 120, 180, 796, 809-14, 820-21, 823-24, 835, 839-40, 1254, 1257-59, 1266-67, 1272, 1279, 1283, 1286, 1290, 1297, 1306). Plaintiff also cites evidence of visits to the emergency room "for mental health impairment related symptoms" three times between November 2018 and September 2019, as well as hearing testimony regarding the severity of her symptoms. (Document No. 13, pp. 8-9) (citing Tr. 201-03, 209-11, 213, 580, 661, 618).

Plaintiff states that "the ALJ fails to explain how his conclusion that 'as the claimant does not regularly receive treatment for any mental impairment symptoms, it is reasonable to conclude that the claimant would have improved functionality if she chose to do so' is supported by and based on the administrative record." (Document No. 13, pp. 10-11) (quoting Tr. 181). Rather, Plaintiff argues, "[t]he ALJ bases his conclusion almost exclusively on an absence of evidence without addressing the substantial conflicting evidence of record." (Document No. 13, p. 11) (citing Tr. 180-81). Further, Plaintiff argues, "[t]here is only an 'absence of evidence' in the ALJ's analysis because he chose to ignore extensive evidence that contradicts his conclusions." Id. Plaintiff contends that "[f]ailing to consider extensive conflicting evidence requires remand." Id. (citing Patterson v. Comm'r Soc. Sec. Admin., 846 F.3d 656, 662-63 (4th Cir. 2017).

In response, Defendant first notes that Plaintiff was previously denied benefits for a period from January 13, 2015, through August 14, 2018. (Document No. 15, p. 5); see also (Tr. 181,

8

224-35).  Defendant further notes that Plaintiff has not presented "any evidentiary circumstance" explaining her alleged disability as of August 15, 2018.  (Document No. 15, p. 5).

Addressing the first assignment of error, Defendant argues that "an ALJ is not required to discuss each piece of evidence."  Id. (citing Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865-66 (4th Cir. 2014).  Defendant contends that "the ALJ's RFC represents a thorough analysis of plaintiff's capabilities based upon a complete examination of the record."  (Document No. 15, p. 6) (citing Tr. 178-79).

Defendant refers to the ALJ's treatment of State agency psychological medical consultants' evaluations as substantial evidence supporting the ALJ's assessment of Plaintiff's mental impairments.  (Document No. 15, pp. 7-8) (citing Tr. 181).  Defendant notes that "[t]he ALJ found generally persuasive" the opinions of Drs. Kendra McCarty, Keith Noles, and Chad Ritterspach— opinions which indicated that Plaintiff's mental impairments were mild or moderate.  (Document No. 15, p. 7) (citing Tr. 181, 253-54, 278, 283, 797).

Defendant asserts that "[t]he support of SA reviewing and examining consultants alone makes the ALJ's RFC supported by substantial evidence in this."  (Document No. 15, p. 8) (citing Lusk v. Astrue, No. 1:11 cv-196-MR, 2013 WL 498797, at *4 (W.D.N.C. Feb. 11, 2013) (expert opinions of agency reviewing physicians may amount to substantial evidence where they represent a reasonable reading of the relevant evidence).

Defendant goes on to argue that "[w]hen it comes to RFC, [P]laintiff still bears the burden of production and proof during the first four steps of the disability inquiry; the burden only shifts to the Commissioner at the fifth step."  (Document No. 15, p. 8) (citing Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).  Defendant contends that "[i]t is the claimant's burden to establish how any medically determinable impairments negatively affect functioning."  Id. (citing 20 C.F.R.

9

§§ 404.1512(c), 416.912(c); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004); Plummer v. Astrue, No. 5:11-cv-00006, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011)). Defendant argues that Plaintiff "has failed to meet that burden." Id.

In reply, Plaintiff argues that "the Commissioner failed to explain why the ALJ's decision does not address a substantial portion of the record, including conflicting evidence, and does not explain how the ALJ positively met his burden to do so in the Decision." (Document No. 16, p. 1).

The undersigned finds that the ALJ's decision is supported by substantial evidence. The ALJ has specifically noted Plaintiff's mental impairments and references her lack of "suicidal ideations, hallucinations, or severe psychiatric symptoms." (Tr. 180) (citing Tr. 613, 1253). The ALJ states that "[e]ven without taking prescribed medications or seeking consistent psychiatric care, the claimant did not exhibit severe mental functional loss." Id. (citing Tr. 795-843, 1253-1311). The ALJ goes on to state that "[w]hen the claimant engaged in mental health treatment, records show an improvement in her ability to function by her own subjective estimation." Id. (citing Tr. 1253-1311). The ALJ also reviewed the medical opinions of multiple examiners with respect to Plaintiff's mental impairments and compared their relative persuasiveness. (Tr. 181) (citing Tr. 244-69, 272-99, 789-98, 1312).

The ALJ explains his RFC calculations with respect to Plaintiff's mental impairments as follows:

> The claimant's mental impairments also indicate that nonexertional limitations to the light level are appropriate. The claimant can perform unskilled work in 2 hour segments and perform nonproduction pace work (meaning non-automated/conveyor pacing) as she has moderate limitations in an ability to concentrate, persist, or remain on pace. The claimant can have occasional interaction with the public, coworkers and supervisors as she has moderate limitations in this area. For the same reason, she should not engage in work that requires teamwork or tandem work. In an effort to prevent exacerbation of her mental impairment symptoms,

10

> the undersigned finds the claimant can have no more than infrequent workplace changes, no conflict resolution or crisis management. The claimant also requires 2 additional restroom breaks of 5 minutes each in each half of the workday to accommodate both the claimant's physical impairment symptoms and to provide respite for her concentrating, persisting, or remaining on pace limitations.

(Tr. 180).

The undersigned notes that this Court is not permitted to re-weigh the evidence with respect to Plaintiff's impairments, so long as the ALJ's decision is supported by substantial evidence. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The undersigned further notes that substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).

Although Plaintiff presents a cogent argument in support of her first assignment of error, the undersigned must respectfully decline to re-weigh the evidence. The ALJ's decision is thorough, and more than adequately satisfies requirements set forth above under the standard of review.

**B.     Medical Opinion**

Next, Plaintiff argues that "[t]he ALJ failed to explain adequately the basis for discounting Dr. Christo's medical opinion." (Document No. 13, p. 12) (citing Tr. 1312). The medical opinion cited by Plaintiff is a letter dated April 11, 2019, that simply states:

> It is my medical opinion that Kami McCoy is unable to work at this time due to severe recurring Depression and PTSD. If you have any questions or concerns, please don't hesitate to call.

(Tr. 1312).

Plaintiff notes that "Dr. Christo is Ms. McCoy's treating psychiatrist and is familiar with her psychiatric condition and symptoms." (Document No. 13, p. 12). Plaintiff contends that "[i]n finding that the evidence of record does not support a medical opinion, the ALJ must specify

11

evidence contradicting the opinion and explain why the evidence supports the ALJ's conclusion." (Document No. 13, p. 14) (citing Arakas v. Comm'r Soc. Sec. Admin., 983 F.3d 83, 106 (4th Cir. 2020)).

Plaintiff argues that, in evaluating medical opinions, "it must be apparent from the decision that the ALJ considered the source's relationship with the Claimant, the source's medical specialization, and any other relevant factors." (Document No. 3, p. 16) (citing 20 C.F.R. § 404.1520c(c)(3)-(5); Dowling v. Comm'r Soc. Sec. Admin., 986 F.3d 377, 385 (4th Cir. 2021); Lindsey v. Comm'r of Soc. Sec., 2021 WL 4472211, slip op. at *3 (N.D. Ohio Sept. 30, 2021)). Plaintiff contends that, in this case, "the ALJ failed to consider expressly how Dr. Christo's own longitudinal treatment history of the claimant supported Dr. Christo's opinion that she is unable to work due to depression and PTSD." (Document No. 13, p. 16). Plaintiff argues that "the ALJ here does not make it apparent that each factor was considered, or provide a logical explanation to demonstrate how the evidence was weighed in assessing the supportability and consistency of a physician's opinion." (Document No. 13, p. 17).

Plaintiff contends that "the ALJ must identify and delineate specific evidence that supports his conclusion that the medical source opinion is either supported and consistent or is unsupported and inconsistent" and that the ALJ "failed to specify what specific evidence in the record the ALJ believed conflicted with Dr. Christo's opinion." (Document No. 13, p. 16).

Plaintiff further contends that "[t]he ALJ's assessment of supportability is limited to one sentence," an analysis which "on its face is insufficient…." Id. (citing Lindsey, 2021 WL 4472211, at *3). Plaintiff also argues that "the ALJ seemingly misunderstands the true issue to be resolved by the Administration…whether the medical record as a whole supports the medical source statement." Id.

12

Case 3:21-cv-00416-DCK   Document 17   Filed 06/29/22   Page 12 of 15

In addition, Plaintiff asserts that "[t]he ALJ provides no analysis at all of the consistency of Dr. Christo's opinion with the evidence of record."  (Document No. 13, p. 17).  Plaintiff contends that, "[a]s in his faulty assessment of supportability, the ALJ relies on summary conclusions rather than analysis, leaving the basis of his findings unclear and therefore not supported by substantial evidence."  (Document No. 13, p. 18).

Plaintiff concludes that the ALJ's failure to adequately evaluate Dr. Christo's one-sentence "letter of support is harmful."  (Document No. 13, p. 18); see also (Tr. 1312).

In response, Defendant asserts that "[t]he ALJ properly evaluated Dr. Christo's conclusory to whom it may concern one sentence April 11, 2019, opinion."  (Document No. 15, p. 8).  Defendant references the medical examining and reviewing consultants' assessments as evidence conflicting with Dr. Christo's evaluation that supports the ALJ's RFC.  (Document No. 15, p. 9).  Defendant notes that the ALJ explains "the ultimate issue of disability is an issue reserved to the Commissioner….'Disability' is a term of art….It is not a medical term."  Id. (citing Tr. 182).  Defendant also notes that "it is the duty of the ALJ reviewing a case, and not the responsibility of the courts, to resolve any conflicts in the evidence…."  Id.

In reply, Plaintiff again cites <u>Lindsey</u> in arguing that "[a]n ALJ has a duty to consider the supportability and consistency of a medical opinion and to explain how the opinion was evaluated against these factors in a manner that is sufficiently clear for review."  (Document No. 16, p. 3).  Plaintiff argues that "[t]he ALJ failed to address, much less resolve, evidence in the record that conflicts with his conclusions."  (Document No. 16, p. 4).

The undersigned finds that the ALJ sufficiently explained his treatment of the medical opinions, including Dr. Christo's.  The SSA regulations state that the agency "will explain how [it] considered the supportability and consistency factors for a medical source's medical opinions

13

or prior administrative medical findings…." 20 C.F.R. § 404.1520c(b)(2). The regulation goes on to state that the agency "may, but [is] not required to, explain how [it] considered [the other factors] of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative findings in your case record." Id. The statute defines supportability by stating that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). The statute defines consistency by stating that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

Here, the ALJ discusses the medical opinions of State Agency psychological consultants and consultative examiner Chad Ritterspach with respect to Ms. McCoy's mental impairments. (Tr. 181). The ALJ references their opinions that "the claimant has mild to moderate limitations in the relevant mental functional domains." Id. Earlier in his decision, the ALJ states:

> Treatment records also indicate the claimant experienced mental health symptoms that affected her ability to function, albeit not to the severity level alleged by the claimant. The claimant is noted to have some difficulties with anxiety, but reported no suicidal ideations, hallucinations, or severe psychiatric symptoms (B2F|44; B13F|1). Even without taking prescribed medications or seeking consistent psychiatric care, the claimant did not exhibit severe mental functional loss (B4F; B5F; B13F). When the claimant engaged in mental health treatment, records show an improvement in her ability to function by her own subjective estimation (B13F).

(Tr. 180) (citing Tr. 613, 795-843, 1253-1311).

In his decision, the ALJ also directly addresses the medical opinion cited by Plaintiff as follows:

14

> The medical source statement of Michael Christo, M.D. is unpersuasive (B14F). The claimant's medical provider provided no additional information as to why he felt the claimant was unable to return to work. Further, disability is an issue reserved to the Commissioner pursuant to 20 CFR 404.1527(d) and 416.927(d). There is no indication that the definition of disability alluded to in this document in consistent with that of this Agency. Further, his medical opinion is inconsistent with other evidence in the record.

(Tr. 181) (citing Tr. 1312).

The undersigned finds that this explanation is sufficient to conclude that Dr. Christo's opinion stating Plaintiff "is unable to work" is unsupported by the record as a whole and inconsistent with the other evidence in the record to which the ALJ cites in his decision. The undersigned finds that ultimately, the ALJ appears to have considered the explanation (or lack thereof) offered by "[t]he claimant's medical provider" pursuant to 20 C.F.R. § 404.1520c in terms of supportability and consistency to determine its persuasiveness.

### IV. CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will direct that the Commissioner's decision be affirmed.

**IT IS, THEREFORE, ORDERED** that: Plaintiff's "Motion For Summary Judgment…" (Document No. 12) is **DENIED**; the "Defendant's Motion For Summary Judgment" (Document No. 14) is **GRANTED**; and the Commissioner's determination is **AFFIRMED**.

**SO ORDERED**.

Signed: June 29, 2022

David C. Keesler
United States Magistrate Judge